IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 11, 2004 Session

**ORLANDO CRENSHAW v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Lawrence County**
**No. 23646     Stella Hargrove, Judge**

---

**No. M2004-00045-CCA-R3-CD - Filed December 16, 2004**

---

The petitioner, Orlando Crenshaw, convicted of attempted first degree murder, appeals the post-conviction court's denial of his petition for relief.  He asserts that (1) the trial court erred by failing to provide jury instructions on the appropriate lesser included offenses and that his counsel was ineffective for failing to raise the issue on direct appeal; (2) that the trial court erred by failing to comply with the requirements of <u>Momon v. State</u>, 18 S.W.3d 152 (Tenn. 1999), and that his trial counsel was ineffective for failing to adequately prepare him to testify at trial; (3) that the state failed to prove that the offense occurred before the return of the indictment; (4) that the state engaged in prosecutorial misconduct by using false statements to secure the indictment and soliciting false testimony at trial; (5) that the trial court erred by providing a misleading jury instruction on the issue of criminal responsibility and that his counsel was ineffective for failing to present the issue as a ground for relief on direct appeal; (6) that the trial court erred by failing to provide a limiting instruction with regard to certain of the evidence; (7) that he was denied the right to a fair trial because the same jury pool used in the trial of his co-defendant was used for his trial and that his counsel was ineffective for failing to object to the jury pool; (8) that he was denied the right to a fair trial because of a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); and (9) that the state denied his right to a fair trial by utilizing mutually exclusive theories in his trial and that of his co-defendant.  For the reasons set forth in this opinion, the judgment of the post-conviction court is reversed, the conviction is set aside, and the cause is remanded for a new trial.

**Tenn. R. App. P. 3; Judgment of the Trial Court Reversed and Remanded**

GARY R. WADE, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

William J. Eledge, Lawrenceburg, Tennessee, for the appellant, Orlando Crenshaw.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; and Jim White, Assistant District Attorney General, for the appellee, State of Tennessee.

1

**OPINION**

On September 1, 1999, the petitioner was convicted of attempted first degree murder related to the shooting and beating of Angelo Wilson, a confidential informant for the police. The trial court imposed a Range I sentence of twenty-five years and a $40,000 fine. This court affirmed on direct appeal. State v. Crenshaw, 64 S.W.3d 374 (Tenn. Crim. App. 2001).

The opinion of this court on direct appeal summarized the pertinent facts. At trial, the victim testified that he had bought drugs from the petitioner while working as a paid confidential informant and that the transactions were recorded on audiotape. The petitioner was charged with drug offenses as a result of the recorded purchases. As a part of the pretrial discovery process, the petitioner received copies of the tape recordings. The victim stated that he heard the petitioner remark that if he found out the identity of the informant, he would either kill him or have him killed. Later, a copy of an audiotape featuring the victim buying drugs from the petitioner was sent to the victim's residence.

On September 9, 1998, the victim encountered his friend, Butch Osepczuk, and asked Osepczuk for a ride to work. Osepczuk then telephoned Terry Polidoro, who agreed to transport the victim to his place of employment. Along the way, Polidoro stopped the car, told the victim that he and Osepczuk had to "make a deal," and asked the victim to wait beside the road. The two men then drove away in the car. When they returned in the car, Osepczuk said, "Come on. Let's go. We're ready." Id at 379. As the victim approached the car, however, Osepczuk began to shoot, striking the victim in his right leg. When the victim ran into a soybean field, he fell and Osepczuk and Polidoro, who had followed him, beat him. According to the victim, Osepczuk hit him in the head with a long gun and Polidoro struck him with a board. It was only when the victim pretended to be dead that his assailants left. The victim, whose injuries included seven gunshot wounds and various other injuries from being struck with the gun and the board, was able to summon help from a nearby residence.

Telephone records established that on the date of the offense, a telephone call was placed from the motel where Osepczuk was staying to the residence of the petitioner's aunt. On the day following the offense, the petitioner met with Osepczuk at the residence of Jennie Douglas. At 12:13 p.m. that day, a telephone call was placed to the petitioner's residence from the residence of Genevieve Smith. Osepczuk was arrested at Ms. Smith's residence two hours later.

Daniel Freemon, an attorney who represented the petitioner on the drug charges, was called as a witness at trial to establish that he had delivered copies of the audiotape recordings to the petitioner three months before the offense. Stephen R. Perry, Osepczuk's stepfather, testified that the petitioner told him that he had identified the victim's voice on the audiotapes and asked him if he knew someone "who would take care of the victim." Id at 381. Gary Claude White revealed that the petitioner offered him $10,000 to murder the victim, explaining that the victim was an undercover agent. White admitted, however, that he had given conflicting statements to the police as to when the petitioner made the offer.

2

The petitioner filed a timely petition for post-conviction relief alleging that the trial court erred by failing to instruct on certain lesser included offenses, that the prosecution failed to prove that the offense occurred before the return of the indictment, that the prosecution solicited and presented false testimony at trial, that the trial court's instruction on criminal responsibility was misleading, that the trial court failed to provide a necessary limiting instruction, that trial counsel unilaterally denied him the right to testify, and that he had been denied the effective assistance of counsel. The post-conviction court appointed counsel and the petition was amended to include additional grounds for relief: that the petitioner was denied the right to a fair and impartial jury, that the state violated the requirements of Brady, that the state violated his right to a fair trial by utilizing "mutually exclusive" theories at his trial and at Osepczuk's trial, and that the state violated the petitioner's right to a fair trial by using false testimony to secure the indictment.

At the evidentiary hearing on the petition for post-conviction relief, trial counsel testified that he met with the petitioner, who was in jail, approximately six times prior to trial. Trial counsel recalled that he had asked the trial court to instruct the jury on the lesser included offenses of facilitation of attempted first degree murder, attempted second degree murder, facilitation of attempted second degree murder, aggravated assault, and facilitation of aggravated assault. He testified that the trial court instructed only on facilitation of attempted first degree murder as a lesser included offense. Trial counsel remembered that Ben Jordan, the boyfriend of the victim's mother, took an audiotape from his pocket while testifying at trial but the recorded contents were never played to the jury and the tape was not admitted into evidence. Trial counsel explained that he did not ask for a limiting instruction because the contents of the tape were not disclosed to the jury and because "a limiting instruction can be an exclamation point." He was unable to remember whether the trial court provided a limiting instruction with regard to testimony about the defendant's history of illegal drug activity.

Trial counsel recalled that after several hours of deliberations, the jury reported that they were deadlocked at eleven to one. The trial court allowed the jury to break for the evening, directing them to return the next morning to deliberate further. Trial counsel acknowledged that the trial court had incorrectly instructed the jury that the state was only required to prove by a preponderance of the evidence that the crime occurred before the return of the indictment. He contended, however, that the date of the crime was not an issue at trial, implying that the mistake was inconsequential. Trial counsel explained that while the same jury pool was used for both the petitioner's and Osepczuk's trials, none of the jurors who served on Osepczuk's panel were called for jury selection in the petitioner's case. During cross-examination, trial counsel testified that even though the state had an open file discovery policy, the tape produced by Jordan was not provided to him prior to trial.

TBI Agent Wayne Wesson, who presented the case against the petitioner to the grand jury, testified that he interviewed Attorney Freemon, who had represented the petitioner in his drug cases. He recalled that Freemon gave him a written history of the petitioner's cases, which indicated that the petitioner had received an audiotape recording of the drug transaction on June 3, 1998, and had returned the tape to Freemon on the following day. Agent Wesson confirmed that Stephen Perry gave a statement to the police indicating that the petitioner had shown him an

3

audiotape in March or April of 1998, several months before the shooting. Agent Wesson recalled that Perry could not recall the exact month that he had seen the tape in the petitioner's possession. The officer testified that when he presented the case to the grand jury, he did not refer to any dates and simply stated that he had talked to three witnesses, each of whom had been asked by the petitioner to "take care of" the victim. All three of the witnesses testified at the petitioner's trial. During cross-examination, Agent Wesson testified that he had not directly participated in the investigation of the drug cases involving the petitioner.

The petitioner testified that he was not informed by his counsel of either the trial strategy or any proposed jury instructions. He complained that he received no help from his counsel in preparation for his trial testimony. The petitioner stated that at the time of his trial, he had not been convicted of any felony offenses or any crimes involving dishonesty but was nevertheless not called as a witness. He also pointed out that he was not asked to waive his right to testify. The petitioner complained that the indictment was not read to the jury and claimed that none of the witnesses testified that the crime occurred before the return of the indictment. He insisted that the state knowingly solicited false testimony when it allowed Stephen Perry to testify that the petitioner had approached him with a tape in March or April when the state was fully aware that the petitioner had not received the tapes from Attorney Freemon until June of the same year. The petitioner also complained that while his trial counsel asked the trial court to give a limiting instruction as to his role in the drug offenses, no instruction was given.

In an extensive order, the post-conviction court denied relief, concluding that there were instructions on the appropriate lesser included offenses and that trial counsel's failure to raise the issue on direct appeal was a "tactical trial maneuver." As to the petitioner's claim that his trial counsel failed to prepare him to testify at trial, the post-conviction court ruled that both trial counsel and the petitioner were "well prepared for trial." The post-conviction court also found that the petitioner had waived any claim that the state failed to prove that the crime occurred before the finding of the indictment or that the indictment was not read to the jury by failing to present these issues on direct appeal. The post-conviction court concluded that "no false testimony was solicited by the State from Steve Perry, either at trial, or relative to the grand jury presentment." With regard to the petitioner's complaint that the criminal responsibility instruction was misleading, the post-conviction court denied relief, observing that it had charged the pattern instruction and that the "appropriate [jury] instructions" were provided. The post-conviction court also observed that even though the same jury venire was used for the trials of the petitioner and Osepczuk, different panels were called for each trial. The court ruled that the state had not used mutually exclusive theories in the separate trials of the petitioner and Osepczuk and concluded that the petitioner was not denied the effective assistance of counsel.

In this appeal, the petitioner asserts that the trial court erred by failing to provide jury instructions on the appropriate lesser included offenses, by giving a misleading instruction on criminal responsibility, and by failing to provide a limiting instruction with regard to testimony about the his prior drug involvement. He also asserts that the state failed to prove that the offense occurred before the return of the indictment, engaged in prosecutorial misconduct by using false statements to secure the indictment, denied his right to a fair trial by utilizing mutually exclusive theories in the trials of him and his co-defendant, and violated the

4

requirements of <u>Brady</u> by withholding exculpatory evidence. The petitioner further contends that he was denied the right to a fair trial because of a mixing of the jury pools and argues that he was denied the effective assistance of counsel.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. <u>See</u> Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. <u>Hicks v. State</u>, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. <u>Brooks v. State</u>, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. <u>Clenny v. State</u>, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. <u>Bates v. State</u>, 973 S.W.2d 615 (Tenn. Crim. App. 1997).

I

The petitioner first asserts that the trial court erred by failing to provide instructions to the jury on the appropriate lesser included offenses. He contends that the trial court should have charged attempted second degree murder, facilitation of attempted second degree murder, reckless endangerment, facilitation of reckless endangerment, and solicitation of first degree murder. The state submits that waiver applies because the petitioner failed to present the issue as a ground for relief on direct appeal.

Tennessee Code Annotated section 40-30-106 provides, in pertinent part, as follows:
(g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
(1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
(2) The failure to present the ground was the result of state action in violation of the federal or state constitution.
Tenn. Code Ann. ' 40-30-106(g) (2003).

Because the petitioner did not, in fact, cite the issue in his motion for new trial and failed to present the issue on direct appeal, waiver applies. <u>See id.</u>; <u>see also</u> Tenn. R. App. P. 3; <u>State v. Coldwell</u>, 671 S.W.2d 459, 465 (Tenn. 1998).

In a related claim, the petitioner asserts that his trial counsel was ineffective by failing to challenge the trial court's failure to instruct on the lesser included offenses in a motion for new trial or on direct appeal. The state contends that trial counsel's failure to challenge the ruling of the trial court qualifies as a tactical decision. In the alternative, the state submits that because the failure to instruct on the suggested lesser included offenses was harmless beyond a reasonable doubt, the petitioner is not entitled to relief.

5

Trial counsel testified that he filed a written request seeking instructions on facilitation of attempted first degree murder, attempted second degree murder, and aggravated assault. While counsel could not recall if he had "followed-up" on his written request, he did remember that the only lesser included offense charged to the jury was facilitation of attempted first degree murder. Trial counsel was not questioned about his failure to present the issue in either the motion for new trial or on direct appeal.

The post-conviction court denied relief, observing that "trial counsel was satisfied with [the single] lesser offense." The court characterized trial counsel's failure to challenge the propriety of the instructions as a "tactical trial maneuver." The post-conviction court also ruled that the "evidence . . . was overwhelming as to the solicitation, planning and premeditation of the murder of [the victim], the informant in Petitioner's multiple drug cases-resulting in grave, life-threatening injuries to [the victim], when he was shot numerous times, beaten and clearly left for dead in a soybean field."

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). The error must be so serious as to render an unreliable result. Id. at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. Id. at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no

6

presumption of correctness.  Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

In order to prevail on his claim that trial counsel was ineffective for failing to cite as error the trial court's failure to provide an instruction on the lesser included offenses of attempted second degree murder, facilitation of attempted second degree murder, aggravated assault, facilitation of aggravated assault, and solicitation of first degree murder, the petitioner must not only establish that his counsel was deficient by failing to present the issue but he must also demonstrate that he was prejudiced as a result.  To establish that he was prejudiced by the omission of the lesser included issue on appeal, the petitioner must show that there is a reasonable probability that the result of his direct appeal would have been different had counsel argued that the failure to instruct on the lesser included offenses was erroneous.  In other words, he must establish that this court would likely have reversed his conviction in the original appeal and remanded for a new trial.

The initial inquiry is whether the trial court erred by failing to instruct the jury on other lesser included offenses.  Whether a given offense should be submitted to the jury as a lesser included offense is a mixed question of law and fact.  State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001) (citing State v. Smiley, 38 S.W.3d 521 (Tenn. 2001)).  The standard of review for mixed questions of law and fact is de novo with no presumption of correctness.  Id.; see also State v. Burns, 6 S.W.3d 461.  The trial court has a duty "to give a complete charge of the law applicable to the facts of a case."  State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30.

The trial court has a duty to instruct the jury as to a lesser included offense if: (1) Reasonable minds could accept the offense as lesser included; and (2) the evidence is legally sufficient to support a conviction for the lesser included offense.  Burns, 6 S.W.3d at 469; see also State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999).  Moreover, our supreme court has held that trial courts "must provide an instruction on a lesser-included offense supported by the evidence even if such instruction is not consistent with the theory of the State or of the defense. The evidence, not the parties, controls whether an instruction is required."  State v. Allen, 69 S.W.3d 181, 188 (Tenn. 2002).  Our high court observed that the "jury is not required to believe any evidence offered by the State," and held that the authority of the jury to convict on a lesser included offense may not be taken away, even when proof supporting the element distinguishing the greater offense from the lesser offense is uncontroverted.  Id. at 189.

In Burns, our supreme court adopted a modified version of the Model Penal Code in order to determine what constitutes a lesser included offense:
An offense is a lesser included offense if:
(a) all of its statutory elements are included within the statutory elements of the offense charged; or
(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
(1) a different mental state indicating a lesser kind of culpability; and/or

7

(2) a less serious harm or risk of harm to the same person, property or public interest, or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b).

6 S.W.3d at 466-67.

Under part (a) of the Burns test, attempted second degree murder would be a lesser included offense of attempted first degree murder. Under part (c), facilitation of attempted second degree murder would be a lesser included offense of attempted first degree murder. Id. With regard to aggravated assault, however, our courts have repeatedly held that aggravated assault is not a lesser included offense of attempted first degree murder. See State v. Trusty, 919 S.W.2d 305, 311-312 (Tenn. 1996), overruled on other grounds by State v. Dominy, 6 S.W.3d 472, 475 (Tenn. 1999); see also Randall Carver v. State, No. M2002-02891-CCA-R3-CO (Tenn. Crim. App., at Nashville, May 16, 2003); State v. Mario C. Estrada, No. M2002-00585-CCA-R3-CD (Tenn. Crim. App., at Nashville, Mar. 14, 2003), perm. app. granted, No. M2002-00585-SC-R11-CD (Tenn. June 30, 2003); State v. Renne Efren Arellano, No. M2002-00380-CCA-R3-CD (Tenn. Crim. App., at Nashville, Feb. 26, 2003), perm. app. granted, No. M2002-00380-SC-R11-CD (Tenn. June 30, 2003); State v. Randall White, No. M2000-01492-CCA-R3-CD (Tenn. Crim. App., at Nashville, Mar. 27, 2002); State v. Joshua Lee Williams, No. W2000-01435-CCA-R3-CD (Tenn. Crim. App., at Jackson, June 27, 2001); State v. Christopher Todd Brown, No. M1999-00691-CCA-R3-CD (Tenn. Crim. App., at Nashville, Mar. 9, 2000). Similarly, facilitation of aggravated assault would not be a lesser included offense of attempted first degree murder.

The defendant also contends that the trial court should have instructed on solicitation of first degree murder as a lesser included offense of attempted first degree murder. Under part (c) of Burns, solicitation "to commit the charged offense or any lesser included offense" is generally recognized as a lesser included offense. Here, however, the charged offense was attempted first degree murder. To determine whether solicitation of first degree murder is a lesser included offense of attempted first degree murder, an examination of the relevant statutory definitions is necessary.

In this case, the defendant was convicted of attempted first degree murder under a theory that he was criminally responsible for the conduct of Osepczuk and Polidoro. As it applies to these circumstances, Tennessee Code Annotated section 39-11-402 provides that "[a] person is criminally responsible for an offense committed by the conduct of another if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(a)(2). Attempt is defined as follows:

8

(a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a). As to solicitation, our code provides that

Whoever, by means of oral, written or electronic communication, directly or through another, intentionally commands, requests or hires another to commit a criminal offense, or attempts to command, request or hire another to commit a criminal offense, with the intent that the criminal offense be committed, is guilty of the offense of solicitation.

Tenn. Code Ann. § 39-12-102(a). The evidence will support a conviction under a theory of criminal responsibility if it establishes the defendant solicits another to commit the offense. See Tenn. Code Ann. § 39-11-402(a)(2). Under these circumstances, solicitation of first degree murder is a lesser included offense of attempted first degree murder.

The fact that dual convictions for solicitation of first degree murder and attempted first degree murder are prohibited by statute supports our conclusion. See Tenn. Code Ann. § 39-12-106(a). Finally, our legislature has provided for a less severe punishment for solicitation of first degree murder, which is designated a Class B felony while attempted first degree murder is designated a Class A felony. See Tenn. Code Ann. § 39-11-117. In State v. Kathy Ball, No. 03C01-9512-CC-00387 (Tenn. Crim. App., at Knoxville, Oct. 31, 1997), this court ruled that "[t]his statutory classification demonstrates that solicitation of first degree murder is a lesser grade or class of attempted first degree murder." While Ball was decided prior to Burns, the reasoning is applicable.

Our next inquiry is whether the evidence in this case warranted instructions on solicitation of first degree murder, attempted second degree murder, and facilitation of attempted second degree murder. The proof at trial established that the petitioner had been charged with a number of drug offenses as a result of purchases made by the victim, who was acting as a confidential informant. The petitioner received copies of the audiotapes of the transactions in the discovery process of the drug cases. He played the tapes for several individuals, and expressed a desire to have the victim "taken care of." Telephone records showed that the petitioner was in contact with Osepczuk both before and after Osepczuk and Polidoro shot the victim, beat him, and left him for dead. The petitioner's defense was that he had not participated in the crimes.

9

The proof at trial was that Osepczuk and Polidoro attacked the victim at the petitioner's request. Thus, an instruction on solicitation of first degree murder was warranted. Because attempted second degree murder is a lesser included offense under part (a) of the Burns test, the proof of the greater offense necessarily proved the lesser offense. In consequence, an instruction on attempted second degree murder would have been appropriate. With regard to facilitation of attempted second degree murder, the jury could have determined from the evidence that the petitioner provided no more than "substantial assistance," in the words of the statute, to Osepczuk and Polidoro in the attempt on the victim's life.

Because the proof at trial justified instructions on solicitation of first degree murder, attempted second degree murder, and facilitation of attempted second degree murder, it is our view that the trial court should have instructed the jury on those offenses. Counsel candidly admitted that although he filed a written request seeking instructions on the lesser included offenses, he failed to follow up on the request. He failed to make any objection to the jury instructions. There was simply no proof that trial counsel chose not to raise the issue for tactical reasons. In our view, there was no reasonable explanation for the omission. In that regard, the evidence preponderates against the finding of the trial court. The failure of trial counsel to present the issue in the motion for new trial or on direct appeal qualifies as a deficiency in performance.

Our next inquiry is whether the oversight can be classified as harmless error. If so, then the failure of the petitioner's counsel to present the issue on direct appeal did not result in any prejudice. In Allen, our high court concluded that when the trial court improperly fails to instruct on a lesser included offense, the error is constitutional in nature, based upon the fundamental right to a jury. The inquiry is the same as for other constitutional errors: whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial. Allen, 69 S.W.3d at 191. In making this determination, "a reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." Id.

As indicated, the petitioner was convicted of attempted first degree murder. His defense was that he was not involved in the crime at all. That the petitioner had asked others to "take care of" the victim and had spoken with Osepczuk immediately before and after the crime was circumstantial evidence of his guilt. In addition, there was proof that the petitioner had offered Gary White $10,000 to "do the victim in." Because the evidence established that Osepczuk and Polidoro, after a discussion with the petitioner, drove the victim into a secluded area, attacked and shot him, and stopped only when he pretended to be dead, it is our view the evidence of premeditation was so overwhelming that the trial court's failure to instruct on the offenses of attempted second degree murder and facilitation of attempted second degree murder, even though erroneous, can be classified as harmless beyond a reasonable doubt. See State v. Richmond, 90 S.W.3d 648, 662 (Tenn. 2002). In consequence, the petitioner has failed to establish that he was prejudiced by trial counsel's failure to present the issue as a ground for relief on appeal.

10

The same cannot be said with regard to the trial court's failure to provide an instruction on solicitation of first degree murder. The post-conviction court observed that the "evidence in the case was overwhelming as to the solicitation, planning and premeditation of the murder of [the victim]." The state's theory, which was supported entirely by circumstantial proof, was that the petitioner asked Osepczuk and Polidoro to kill the victim. Under these circumstances, a properly instructed jury would likely have convicted the petitioner of solicitation of first degree murder. See Richmond, 90 S.W.3d at 662. The failure to instruct on that offense cannot, therefore, be classified as harmless beyond a reasonable doubt. See id.; Allen, 69 S.W.3d at 191.

In State v. Zimmerman, 823 S.W.2d 220, 225 (Tenn. Crim. App. 1991), this court observed that the petitioner need not establish that, absent the deficiency in counsel's performance, he would have been acquitted. We held that "[a] reasonable probability of being found guilty of a lesser charge, or a shorter sentence, satisfies the second prong in Strickland." Id. Because the trial court's failure to instruct on solicitation of first degree murder was not harmless beyond a reasonable doubt, the petitioner has established that he was prejudiced by his counsel's failure to present the issue in a motion for new trial and on direct appeal. He is, therefore, entitled to a new trial. The judgment of the post-conviction court is reversed, the conviction is set aside, and the cause is remanded for a new trial.

II

The petitioner next contends that his trial counsel was ineffective for failing to adequately prepare him to testify at trial. He also asserts that the trial court committed reversible error by failing to comply with the requirements of Momon v. State, 18 S.W.3d 152, 157 (Tenn. 1999). The state submits that trial counsel was not deficient and that the ruling in Momon does not apply because the petitioner's trial occurred prior to that decision.

As indicated, the petitioner bears the burden of proving his claim by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). To prevail on a claim of ineffective assistance of counsel, the petitioner must establish that his trial counsel's performance was deficient and that, but for the deficiency, the outcome of his trial would have been different. See Strickland, 466 U.S. at 693.

The petitioner complained that he met with trial counsel only five or six times prior to trial and that they never discussed his right to testify. He pointed out that he had no prior convictions that could have been used to impeach his testimony. The petitioner did not contend that trial counsel deprived him of the right to testify or that he wanted to testify at trial. Although trial counsel confirmed that he met with the petitioner five or six times prior to the trial, he was not otherwise questioned during the post-conviction hearing about the petitioner's failure to testify at his trial.

After observing that trial counsel was afforded open file discovery by the state, the post-conviction court determined that trial counsel was thoroughly prepared for trial and that he had adequately prepared the petitioner for trial. It found that trial counsel met with the petitioner a sufficient number of times and that he acquired other information from Agent Wesson and Attorney Freemon, the petitioner's attorney in the drug cases. The post-conviction court

11

concluded that because the trial in this case predated the ruling in Momon, that ruling did not apply to the petitioner.

It is well established that a criminal defendant has a constitutional right to give testimony under both the state and federal constitutions. See Momon, 18 S.W.3d at 157. Article I, section 9 of the Tennessee Constitution has been interpreted to require that Ain all criminal prosecutions the accused has the right to testify as a witness in his own behalf and to be represented by counsel.@ Id. (citing State v. Burkhart, 541 S.W.2d 365, 371 (Tenn. 1976)). In Rock v. Arkansas, 483 U.S. 44, 50 (1987), the United States Supreme Court declared that the right of a criminal defendant to testify in his own behalf was essential to the due process of law. Because the right to testify is fundamental, it may only be waived by the defendant. Momon, 18 S.W.3d at 161 (citing Jones v. Barnes, 463 U.S. 745 (1983); State v. Blackmon, 984 S.W.2d 589, 591 (Tenn. 1998); Vermilye v. State, 754 S.W.2d 82, 88 (Tenn. Crim. App. 1987)). Prior to our supreme court's holding in Momon, a petitioner's claim that his counsel prevented him from testifying in his own behalf was treated like any other ground asserted for a claim of ineffective assistance of counsel. See, e.g., Shone King v. State, No. 01C01-9709-CR-00408 (Tenn. Crim. App., at Nashville, Dec. 30, 1998).

In our view, the petitioner has failed to establish by clear and convincing evidence that his trial counsel did not adequately prepare him to testify. Notably, the petitioner did not claim at the evidentiary hearing that he wanted to testify at trial and was denied the right to do so by his trial counsel. He also did not suggest what trial counsel should have done differently during his trial preparation. Further, trial counsel was not questioned at all as to the reasons the petitioner was not offered as a witness at trial. Under these circumstances, the petitioner is not entitled to relief on this ground.

In a related complaint, the petitioner contends that the trial court failed to comply with the requirements of Momon v. State. In Momon, our supreme court held that as a procedural safeguard, the waiver of the defendant's right to testify should be attained through a voir dire of the defendant in open court. 18 S.W.3d at 162. Our high court observed, however, that "neither the right to testify discussed herein, nor the procedural protections adopted to preserve that right are new constitutional rules which must be retroactively applied." Id. at 162-63. Moreover, our high court stated that the safeguards announced in Momon were prophylactic in nature and not constitutionally required. Id. The petitioner's trial occurred in September of 1999, two months before our supreme court's decision in Momon. Because a voir dire of the defendant regarding his waiver of the right to testify was not required at that time, the petitioner is not entitled to relief on this ground.

### III

Next, the petitioner contends that the state failed to prove that the offense occurred before the return of the indictment. He also complains that the indictment was not read to the jury. The state submits that because the petitioner failed to present the issue as a ground for relief on direct appeal, waiver applies.

12

As indicated, Tennessee Code Annotated section 40-30-106 provides, in pertinent part, as follows:

> (g)  A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
>
> (1)  The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
>
> (2)  The failure to present the ground was the result of state action in violation of the federal or state constitution.

Tenn. Code Ann. ' 40-30-106(g) (2003).  Here, the petitioner argues that the post-conviction court should have granted relief because the state failed to prove that the offense occurred before the return of the indictment and that the indictment was not read to the jury.  Neither claim is based upon a new constitutional right.  Nor was the failure to timely present the issue the result of state action.  The claims could have been presented on direct appeal.  Because the petitioner did not cite the issues in his motion for new trial and failed to present the issues on direct appeal, waiver applies.  See id.; see also Tenn. R. App. P. 3; Coldwell, 671 S.W.2d at 465.

Moreover, the petitioner is not entitled to relief on the merits of the issue.  Trial counsel testified that he could not remember if any witness was specifically asked whether the offense occurred before the return of the indictment.  His notes indicated that the indictment was read to the jury but he had no specific recollection of the reading.  The petitioner testified that the indictment was not read to the jury and he could not remember whether any witness was asked whether the offense occurred before the return of the indictment.

With regard to the petitioner's claim that the state failed to prove that the offense occurred before the indictment, the post-conviction court ruled that the issue had been waived.  With regard to his claim that the indictment was not read to the jury, the court concluded that the claim was "utterly absurd," observing that the petitioner did not have the entire trial transcript.

Tennessee Code Annotated section 39-11-201 provides that the state must prove beyond a reasonable doubt that the "offense was committed prior to the return of the formal charge."  Tenn. Code Ann. ' 39-11-201(a)(4).  In State v. Brown, 53 S.W.3d 264, 279 (Tenn. Crim. App. 2000), this court made the following observations with regard to this requirement:

> Granted, this is an easy matter to prove. . . . [The] reading of the indictment to the jury, coupled with evidence of when the offense was committed, would establish that the offense was committed prior to the return of the indictment. Also, the State could merely ask an appropriate witness whether the actions of the defendant constituting the offense occurred before the defendant was charged with that offense. This would satisfy the requirements of the statute as well.

This court concluded that while it was "obvious" the crimes were committed before the defendant was indicted, reversal was required because there was "no evidence that the

13

indictment was ever read to the jury or shown to the jury, and no witness was asked whether the offense occurred prior to the return of the indictment." Id. at 279-280.

Initially, the post-conviction court correctly observed that the transcript offered as an exhibit at the evidentiary hearing is not a record of the entire trial. The record offered by post-conviction counsel consists of two abstracts from the original trial transcript. The abstracts contain only the voir dire of the jury pool, the jury instructions, and the return of the verdict. Without the entire transcript, adequate review of this issue is impossible. It is the duty of the appellant to prepare a record which conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); Groseclose v. State, 615 S.W.2d 142 (Tenn. 1983); State v. Miller, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). In the absence of an adequate record on appeal, this court must presume that the rulings of the post-conviction court were correct. State v. Keen, 996 S.W.2d 842 (Tenn. Crim. App. 1999); Vermilye v. State, 584 S.W.2d 226, 230 (Tenn. Crim. App. 1979). Similarly, the transcript submitted on direct appeal does not include a transcription of the proceedings conducted on the first day of the petitioner's trial, noting that that portion of the trial "was not requested and is not a part of this transcript."[1] The transcript begins with the proceedings from the second day of trial. Because the record does not affirmatively indicate otherwise, our duty is to presume that the evidence does not preponderate against the findings of the post-conviction court. See Murff v. State, 221 Tenn. 111, 425 S.W.2d 286, 289 (1968) ("[E]very presumption must be in favor of the regularity of the proceedings and the validity of the orders and judgment in the lower court, except where the record affirmatively shows otherwise.").

IV

The petitioner next asserts that the state engaged in prosecutorial misconduct by knowingly soliciting testimony at trial that it knew to be false and by failing to correct the information. He also contends that the state engaged in prosecutorial misconduct by using materially false information to obtain the indictment in this case. Other than citing the ruling of the post-conviction court, the state has failed to specifically address this claim.

The petitioner's claim that the state solicited testimony it knew to be false is based upon the testimony of Stephen Perry. At the evidentiary hearing, Agent Wesson testified that he took a statement from Perry approximately one week after the offense. In the statement, Perry indicated that in March or April of 1998, he had spoken with the petitioner about the audiotapes the petitioner had received during the discovery process in his drug cases. Perry provided virtually identical testimony at trial. Attorney Freemon provided a statement to Agent Wesson wherein he indicated that the audiotapes were not given to the petitioner until June of 1998. He also gave Agent Wesson a document prepared during his representation of the petitioner which corroborated that date. In this appeal, the petitioner asserts that because Attorney Freemon indicated that the petitioner did not receive the tapes until June, Perry's assertion that he had

---

[1]Although the transcript of the trial is not included in the record on appeal, this court may take judicial notice of its own records on file. See Tenn. R. App. P. 13(c); James William Dash v. Howard W. Carlton, Warden, No. E2001-02867-CCA-R3-PC (Tenn. Crim. App., at Knoxville, Sept. 11, 2002).

spoken to the petitioner about the tapes in March or April was false and that the state had a duty to "correct" Perry's testimony.

In State v. Spurlock, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993), this court held that "it is a well-established principle of law that the state's knowing use of false testimony to convict an accused is violative of the right to a fair and impartial trial." "When a state witness answers questions on either direct or cross examination falsely, the district attorney general, or his assistant, has an affirmative duty to correct the false testimony." Id. (citing Giglio v. United States, 405 U.S. 150 (1972); Napue v. Illinois, 360 U.S. 264 (1959); Blanton v. Blackburn, 494 F. Supp. 895, 900 (M.D. La. 1980); Hall v. State, 650 P.2d 893, 896 (Okla. Crim. App. 1982)).

In this case, there was a factual discrepancy in the time frames provided by Perry and Attorney Freemon. This was, in the context of the entire trial, a difference in recollection rather than false testimony. In the statement he provided to Agent Wesson, Perry stated that he believed that he had spoken with the petitioner about the tapes in March or April but that he was unsure of the precise time. At the evidentiary hearing, Agent Wesson reiterated that Perry was unsure of the exact month in which he had spoken to petitioner but he was certain that it was prior to the crime. This is not necessarily in conflict with the testimony and documentation provided by Attorney Freemon, which established that the petitioner received the tapes in June, some three months prior to the crime. Under these circumstances, the prosecution was under no duty to correct Perry's testimony. The petitioner is not entitled to relief on this issue.

In a related claim, the petitioner complains that the state used false evidence to obtain the indictment. The claim is based upon the statement provided to Agent Wesson by Perry. At the evidentiary hearing, Agent Wesson testified that Perry's statement was not given to the grand jury. He stated that he made notes from the statement and informed the grand jurors that the petitioner had spoken to Perry about the tapes and the victim's role in his prosecution. According to the officer, he did not make any reference to the date on which the conversation occurred other than saying that it occurred prior to the crime. The post-conviction court implicitly accredited the testimony of Agent Wesson in its order denying relief. In our view, the evidence does not preponderate against the post-conviction court's finding that the state did not use false testimony at trial or during the grand jury proceeding.

V

The petitioner asserts that the trial court erred by providing a misleading criminal responsibility instruction to the jury. In response, the state argues that waiver applies because the issue was not presented on direct appeal. See Tenn. Code Ann. § 40-30-106(g) (2003).

The petitioner has failed to cite any authority for his assertion that the instruction was error. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b);

15

see also Tenn. R. App. P. 27(a)(7); State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987). For this reason, the issue has been waived

Moreover, the record establishes that the trial court instructed the jury in accordance with Tennessee Pattern Jury Instruction 3.01. In State v. Alejandro Rivera, No. E2002-00491-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Dec. 1, 2003), this court specifically approved of the content of the charge as given. Further, while the petitioner correctly points out that the last paragraph of the instruction provided by the trial court did not make reference to an applicable mental state, the paragraph immediately preceding it does:

> The defendant is criminally responsible for an offense committed by the conduct of another, if, acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the defendant solicits, directs, aids, or attempts to aid another person to commit the offense.

Notwithstanding waiver, the petitioner is not entitled to relief on this issue.

Although the petitioner also asserts that his trial counsel was ineffective for failing to object to the instruction at trial and for failing to present it as a ground for relief on direct appeal, the instruction was an appropriate statement of the law. Trial counsel, therefore, was not ineffective for failing to lodge an objection.

VI

The petitioner next contends that the trial court erred by failing to give a limiting instruction regarding his history of selling drugs and claims that an affidavit by juror Martha Jones establishes that he was prejudiced by the omission. The state argues that the issue was previously determined and that the petitioner has waived this issue by failing to present it on direct appeal.

Under the Post-Conviction Procedure Act, a claim which has been previously determined cannot be a basis for post-conviction relief. See Tenn. Code Ann. § 40-30-106(h) (2003). "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." Id.

Trial counsel sought the introduction of Jones' affidavit at the hearing on the motion for new trial as support for his claim that the jury had been exposed to extraneous prejudicial information. Crenshaw, 64 S.W.3d at 691. The trial court refused to consider the affidavit and denied relief. On direct appeal, this court ruled that the affidavit failed to establish that the jury was exposed to extraneous, prejudicial information. Id. at 693-94. While this ruling does not qualify as a previous determination of the petitioner's claim that Jones' affidavit is proof that he was prejudiced by the absence of a limiting instruction regarding his involvement in the sale of drugs, waiver would nevertheless apply based upon the petitioner's failure to present the issue on direct appeal of the conviction. See Tenn. Code Ann. § 40-30-106(g) (2003). In addition, the

16

petitioner has waived our consideration of this issue by failing to cite authority and by failing to include the trial transcript in the record on appeal. See Tenn. R. App. P. 24(b), 27(a)(7).

Further, the petitioner is not entitled to relief on the merits of the issue. The post-conviction court ruled that the drug charges, and particularly the victim's involvement in the investigation, were the motive for the attempted murder of the victim. It determined that testimony regarding the charges was admissible to establish motive. Audiotapes of the drug transactions confirmed that the victim was working as an informant. As to the petitioner's claim that the trial court erroneously failed to provide a limiting instruction regarding this testimony, the post-conviction court ruled that "the appropriate instructions were given."

In our view, evidence of the drug charges against the petitioner was relevant and admissible to give context to the crime. In State v. Gilliland, 22 S.W.3d 266, 272 (Tenn. 2000), our supreme court held that "contextual background evidence, which contains proof of other crimes, wrongs, or acts, may be offered as an 'other purpose' under [Tennessee Rule of Evidence] 404(b) when exclusion of that evidence would create a chronological or conceptual void in the presentation of the case and that void would likely result in significant jury confusion concerning the material issues or evidence in the case." In addition, this evidence was admissible to establish the petitioner's motive for the offense, a permissible purpose under the rule. See, e.g., Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980).

The transcript of the trial establishes that during the victim's testimony, the evidence was admitted to establish motive. The petitioner's trial counsel asked for a limiting instruction but stated that he "[did not] want it at this point." Trial counsel made no other request for a limiting instruction and the trial court did not provide one. While a limiting instruction confining the jury's consideration of this evidence to the permissible purposes would have been helpful, it is our view that the error, if any, was harmless. As indicated, the evidence was relevant. The record establishes that the state offered the evidence for a permissible purpose. In addition, the petitioner has failed to establish that the failure to provide a limiting instruction resulted in prejudice.

At the evidentiary hearing, the petitioner introduced Jones' affidavit as proof that he had suffered prejudice as a result of the omission. Initially, the trial court refused to admit the affidavit at the hearing on the motion for a new trial, explaining that the Tennessee Rules of Evidence permit the admission of juror affidavits only under limited circumstances, none of which existed at the time. As indicated, this court ruled on direct appeal that the affidavit failed to establish that the jury was exposed to extraneous, prejudicial information and was, therefore, inadmissible. Crenshaw, 64 S.W.3d at 693-94.

Now, the petitioner seeks to use Jones' affidavit to establish that he was prejudiced by the omission of a limiting instruction. The problem is that the affidavit is not admissible for this purpose. See Hutchison v. State, 118 S.W.3d 720, 740 (Tenn. Crim. App. 2003). The admissibility of juror affidavits is governed by Tennessee Rule of Evidence 606, which provides in pertinent part as follows:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Tenn. R. Evid. 606(b). The rule expressly prohibits the introduction of juror affidavits to establish "the effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict or indictment." Id. There are only three exceptions to the general rule of exclusion: a juror may testify as to (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion. Id.; see also Caldararo v. Vanderbilt Univ., 794 S.W.2d 738, 742 (Tenn. Ct. App. 1990). As was already determined by this court on direct appeal, juror Jones' affidavit is insufficient to establish that the jury was exposed to extraneous, prejudicial information. Crenshaw, 64 S.W.3d at 693-94. The petitioner does not allege that outside influence was brought to bear on any juror nor does he claim that the jury agreed to be bound by a gambling verdict. Instead, he seeks to use the affidavit to prove the effect that the absence of the limiting instruction had upon the jury; a purpose which is expressly prohibited. See Henley v. State, 960 S.W.2d 572, 580-81 (Tenn. 1997); State v. Workman, 111 S.W.3d 10, 21 (Tenn. Crim. App. 2002). Under these circumstances, it is our view that the petitioner is not entitled to relief on this issue.

VII

The petitioner next asserts that he was denied the right to a fair trial because the same jury pool used in the trial of Osepczuk was utilized for his trial. The state submits that the petitioner has waived our consideration of this issue by failing to present it as a ground for relief on direct appeal and by failing to cite authority for his position.

The petitioner does not allege that any of the jurors from Osepczuk's trial, which was conducted first, were called to serve for the petitioner's trial. He does not assert that the jury empaneled for his trial did not represent a fair cross-section of the community. See Taylor v. Louisiana, 419 U.S. 522, 538 (1975); State v. Nelson, 603 S.W.2d 158, 161 (Tenn. Crim. App. 1980). Further, he has offered no proof to establish that he was prejudiced by the procedure used to select the venire. Finally, he has not alleged any juror bias. See generally Toombs v. State, 197 Tenn. 229, 270 S.W.2d 649, 651 (1954); Durham v. State, 182 Tenn. 577, 188 S.W.2d 555, 557 (1945). The post-conviction court acknowledged that the same jury pool was used for the trials of both the petitioner and Osepczuk but noted that care was taken to ensure that different panels were called for each trial. Under these circumstances, the evidence does not preponderate

18

against the ruling of the post-conviction court that the petitioner is not entitled to relief on this ground.

## VIII

The petitioner next contends that the state failed to produce exculpatory evidence as required under Brady v. Maryland, 373 U.S. 83 (1963). The state argues that the petitioner has waived the issue by failing to present it on direct appeal and by failing to provide citation to authorities.

The petitioner's claim relates to the production of an audiotape during the testimony of state witness Ben Jordan. At trial, Jordan, the boyfriend of the victim's mother, testified that the petitioner had given him an audiotape and directed him to give it to the victim's mother. Jordan then removed the tape from his pocket and handed it to the prosecutor. At the post-conviction hearing, trial counsel testified that he was surprised by the production of the tape and that he had not been provided a copy of the tape prior to trial. He recalled that the state had granted him open file discovery and that he had listened to all of the tapes in the possession of the state. Trial counsel remembered that the trial court sustained his objection to the admission of the tape and that the tape was not played for the jury. During a break, trial counsel listened to the tape and utilized its contents during the cross-examination of Jordan. He explained that he did not ask for a limiting instruction because the tape was not played for the jury.

Agent Wesson testified that during his initial interview with Jordan, Jordan informed him that the petitioner had given him an audiotape and asked him to give it to the victim's mother. According to the officer, Jordan indicated that he either did not have the tape or that the tape was unavailable. Agent Wesson stated that he tried on a second occasion to acquire the tape from Jordan but was unsuccessful. Agent Wesson explained, however, that there were several tapes involved in the prosecution of the petitioner's drug cases and that all of the tapes in the state's possession were provided to Attorney Freemon.

At the evidentiary hearing, the petitioner testified that the jury reacted with surprise when Jordan produced the tape and that trial counsel "didn't do anything to correct that." He claimed that the tape might have been helpful to his defense because the content might not have included his voice. It was the petitioner's belief that the state should have "run into" the tape during the investigation.

Before this court may find a due process violation under Brady, the following elements must be established:

1.   The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
2.   the State must have suppressed the information;
3.   the information must have been favorable to the accused; and
4.   the information must have been material.

19

State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995) (as amended on rehearing).  In this case, trial counsel filed a motion for discovery.  There is no proof, however, that the state suppressed the tape.  The proof at the evidentiary hearing was that the tape remained in the possession of Jordan until he testified at the petitioner's trial.  Further, there is no indication that the information was material or that it was favorable to the accused.  The petitioner did not offer the tape as an exhibit at the evidentiary hearing.  See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).  In our view, the petitioner has failed to establish that the state violated the requirements of Brady.  Similarly, the petitioner has failed to establish that he was prejudiced by trial counsel's performance with regard to the tape.

IX

As his final issue, the petitioner contends that his right to a fair trial was violated because the state used mutually exclusive theories and different evidence in his trial and in that of his co-defendant.  The state asserts that the petitioner has waived this issue by failing to present it as a ground for relief on direct appeal.

Trial counsel testified that the state's theory of the case was that the petitioner solicited Osepczuk and Polidoro to kill the victim.  He stated that he attended Osepczuk's trial and no mention was made of the petitioner.  He recalled that the state did not produce any evidence that the petitioner asked Osepczuk to kill the victim.  Agent Wesson explained that no proof that the petitioner solicited the murder of the victim was presented at Osepczuk's trial because the direct evidence of Osepczuk's guilt was overwhelming without any reference to the petitioner.  The petitioner, who did not attend Osepczuk's trial, testified that he had obtained a copy of this court's opinion in Osepczuk's direct appeal and that it established that the state used a different theory at Osepczuk's trial.  The post-conviction court ruled that the state did not use factually inconsistent theories in the two trials.

As indicated, it was the state's theory at the petitioner's trial that the petitioner solicited the murder of the victim.  This court's opinion in the direct appeal of Osepczuk's conviction establishes that no mention was made of the petitioner or his soliciting the murder of the victim.  State v. Osepczuk, No. M1999-00846-CCA-R3-CD (Tenn. Crim. App., at Nashville, Feb. 1, 2001).  Nevertheless, the petitioner has failed to establish that the state presented factually inconsistent theories and evidence at his and Osepczuk's separate trials.  The evidence offered at each trial as to the circumstances surrounding the attempt on the victim's life was identical.  At the petitioner's trial, the state also offered evidence additional evidence not offered at Osepczuk's trial to connect the petitioner to the crime.  In our view, this does not qualify as inconsistent.  The petitioner is not entitled to relief on this issue.

Because trial counsel performed deficiently by failing to present as a ground for relief on direct appeal the trial court's failure to instruct on solicitation of first degree murder as a lesser included offense and because the petitioner has established that he was prejudiced by the deficiency, the judgment of the post-conviction court must be reversed, the conviction must be set aside, and the cause must be remanded for a new trial. On remand, all lesser included offenses, as warranted by the evidence, should be included in the instructions to the jury.

_____
GARY R. WADE, PRESIDING JUDGE